In The


Court of Appeals


Sixth Appellate District of Texas at Texarkana



______________________________



No. 06-06-00045-CV


______________________________




ROBERT M. GELDARD, SR., Appellant



V.



KAY WATSON, Appellee




 


On Appeal from the County Court at Law No. 2


Gregg County, Texas


Trial Court No. 2006-021-C




 




Before Morriss, C.J., Carter and Moseley, JJ.


Opinion by Justice Moseley



O P I N I O N



 Kay Watson petitioned the justice of the peace court for a forcible entry and detainer (1) to
remove Robert M. Geldard, Sr., her stepfather, from the house in which he had lived for about thirty
years. In defense, Geldard claimed equitable title and his homestead right to remain in possession
of the property. Both the justice court and, on appeal, the county court at law found in Watson's
favor. 

 Geldard again appeals, asserting two points of error: (1) that the trial court erred in finding
Watson to have a superior right to possession against Geldard's homestead right and (2) that the trial
court erred in refusing to take jurisdiction of his cross-action to quiet title. We find, sua sponte, that
the courts below lacked jurisdiction to adjudicate Watson's cause of action. Accordingly, we vacate
the judgment in Watson's favor and dismiss the appeal, including Geldard's counterclaim. 

 (1) Factual Background

 In January 1976, Geldard married Wanda Reed (Wanda) and moved into her house on
Timberline in Longview, Gregg County, Texas, and the two resided together at that residence. The
Timberline property appears to have been Wanda's separate property and estate. (2) Wanda and
Geldard continued to reside together in the Timberline residence from their marriage in 1976 until
Wanda entered a nursing home in October 2005, despite the fact that, in 1990, Wanda executed a
quitclaim deed of the Timberline residence to Watson, her daughter from her earlier marriage. (3) 
Geldard did not sign the deed or any other instrument to cede any right he had in the home and
Geldard continued to reside alone in the house after Wanda entered the nursing home. The parties
dispute whether Geldard was aware that Wanda was going to execute the deed and when he actually
discovered that she had done so. 

 On November 15, 2005, Watson posted a "Notice to Vacate" on the Timberline property and
gave Geldard thirty days to quit his possession of the residence. Geldard refused to leave and, on
December 19, 2005, Watson filed her petition for eviction in the justice court. Geldard asserted his
spousal homestead right as a defense. Wanda died during the pendency of this action.

 (2) The Limited Jurisdiction of the Justice Court

 "The authority of a court to hear a particular case is a systemic requirement that cannot be
waived or conferred by consent and which may be considered at any time." Jacobs v. State, 181
S.W.3d 487, 488-89 (Tex. App.--Texarkana 2005, pet. ref'd). The issue of the subject-matter
jurisdiction of the lower court(s) may be raised sua sponte by an appellate court. Id. (citing Tex.
Ass'n of Bus. v. Tex. Air Control Bd., 852 S.W.2d 440, 445-46 (Tex. 1993)). 

 Justice of the peace courts are courts of limited jurisdiction. See Tex. Const. art. V, § 19;
Tex. Gov't Code Ann. § 27.031 (Vernon 2004). Justice courts have original jurisdiction of a
limited number of causes of action, including cases of forcible entry and detainer. See Tex. Gov't
Code Ann. § 27.031(a)(2). Justice courts expressly do not have jurisdiction of suits to try title to
land. Tex. Gov't Code Ann. § 27.031(b)(4).

 A forcible detainer action is supposed to be a summary, speedy, and inexpensive proceeding
to determine who has the right to immediate possession of a premises. See Fandey v. Lee, 880
S.W.2d 164, 168 (Tex. App.--El Paso 1994, writ denied). Where determination of the right to
immediate possession requires adjudication or resolution of a title dispute, the justice court has no
jurisdiction to enter judgment in the forcible (entry and) detainer action. See Tex. R. Civ. P. 746 (in
forcible entry or forcible detainer actions in justice courts, "the only issue shall be as to the right to
actual possession; and the merits of the title shall not be adjudicated"); Tex. Gov't Code Ann.
§ 27.031(b)(4); Rice v. Pinney, 51 S.W.3d 705, 708-09 (Tex. App.--Dallas 2001, no pet.). This
Court has noted that, when the question of possession in a forcible entry and detainer action is "so
integrally linked" to the question of title, the justice courts lack jurisdiction over the matter. See
Tuncle v. Jackson, No. 06-05-00021-CV, 2005 Tex. App. LEXIS 7557, at *5 (Tex.
App.--Texarkana Sept. 14, 2005, no pet.) (mem. op.).

 By statute, a county court at law in Gregg County has concurrent jurisdiction with the district
court, except for capital murder cases. See Tex. Gov't Code Ann. § 25.0942 (Vernon 2004). 
However, a county court at law exercising appellate jurisdiction over a justice court judgment is
limited to the original jurisdiction of the justice court. See Tuncle, 2005 Tex. App. LEXIS 7557,
at *3; Rice, 51 S.W.3d at 708. Thus, a county court at law which might otherwise have jurisdiction
to adjudicate title to real property is without jurisdiction to do so when sitting in its appellate
jurisdiction over a forcible detainer suit from justice court. See Rice, 51 S.W.3d at 708-09.

 Geldard's asserted homestead right in defense of the forcible detainer action raises an
interesting question: does a homestead interest go to "the merits of title" so as to defeat jurisdiction
over the forcible detainer cause of action in the justice court (and the county court or county court
at law on appeal)?

 (3) The Homestead Right

 (a) The Nature of Homestead Right

 A spouse's homestead right in Texas predates statehood. See Tex. Const. art XVI, § 50
interp. commentary (Vernon 1993). Spousal homestead rights have been constitutionally guaranteed
since the first constitution of the State of Texas. See Tex. Const. of 1845, art. VII, § 22. The
constitution currently provides that "[a]n owner or claimant of the property claimed as homestead
may not sell or abandon the homestead without the consent of each owner and the spouse of each
owner, given in such manner as may be prescribed by law." Tex. Const. art. XVI, § 50(b)
(emphasis added). 

 The Texas Family Code makes it clear that the requirement of the joining of both spouses
to a conveyance of the homestead is mandatory, irrespective of the community or separate property
nature of the realty constituting that homestead. See Tex. Fam. Code Ann. § 5.001 (Vernon 2006). 
"Whether the homestead is the separate property of either spouse or community property, neither
spouse may sell, convey, or encumber the homestead without the joinder of the other spouse except
as provided in this chapter or by other rules of law." See Tex. Fam. Code Ann. § 5.001.

 For over a century's consistent caselaw, the signature of one spouse to a lien on or a
conveyance of the homestead, even if separate property, may not act to the detriment of a nonsigning
spouse who would benefit from the homestead right. See Zable v. Henry, 649 S.W.2d 136 (Tex.
App.--Dallas 1983, no writ); Morris v. Porter, 393 S.W.2d 385, 387 (Tex. Civ. App.--Houston
1965, writ ref'd n.r.e.); Gober v. Smith, 36 S.W. 910, 911 (Tex. Civ. App. 1896). One spouse's
conveyance of her separate property family homestead, without the joinder of the other spouse, is
not void as to the conveying spouse. Grissom v. Anderson, 125 Tex. 619, 79 S.W.2d 619, 621
(1935). It is, however, inoperative against the continuing homestead claim of the nonjoining spouse. 
Id. "A conveyance by a husband, not joined by his wife, of the homestead property, is merely
inoperative while the property continues to be a homestead, or until such time as the homestead may
be abandoned, or the deed ratified in accordance with law." Id. 

 (b) Geldard's Homestead Right

 Watson asserts that Geldard did not prove facts evidencing homestead usage or intent at the
relevant time, i.e., the 1990 conveyance. Geldard testified that:

 Q. Since 1976, where have you lived?

 A. [by Geldard] 406 Timberline Drive.

 Q. You consider that to be your homestead?

 A. Yes.

Watson asserts that this testimony, stating the homestead intent in the present tense, does not
adequately prove the homestead nature of the property as of the date of the 1990 conveyance. 

 We disagree that Geldard's specific testimony that he considered the property to be his
homestead in 1990 is required. The evidence of Geldard's actual use of the property as a homestead
in 1976 was satisfactory and convincing to raise the issue. See Braden Steel Corp. v. McClure, 603
S.W.2d 288, 292-93 (Tex. Civ. App.--Amarillo 1980, no writ); Youngblood v. Youngblood, 124
Tex. 184, 76 S.W.2d 759, 760-61 (Tex. Comm'n App. 1934). Geldard testified to residing in the
Timberline house as (apparently) his only residence since 1976, as the spouse of the owner. Watson
herself testified that, as of 1976, Wanda resided with Geldard in the Timberline house as her
homestead. In the absence of evidence of Geldard's dual residence, homestead disclaimer,
abandonment of the homestead, or other similar evidence which demonstrated that his homestead
right had terminated, further inquiry into Geldard's intent to use the property as a homestead, beyond
the fact of his actual occupancy and use of the property as a home, is unwarranted. See McClure,
603 S.W.2d at 292-93. 

 Watson further contends that Geldard either joined or ratified the conveyance from Wanda
to Watson, so as to eliminate his homestead right. Although Watson testified that she and her
mother discussed their intended action with Geldard before the conveyance, Geldard's alleged failure
to protest when informed of the intended conveyance does not serve as a valid joinder under the
statute. See Smith v. Prater, 161 S.W.2d 361, 362 (Tex. Civ. App.--San Antonio 1942, no writ). 
Watson, citing corporate agency caselaw, asserts that Geldard ratified Wanda's conveyance to
Watson because of his silence and because he "never gave the impression that he didn't want
Appellee to own the house." Watson's cited authority is not on point, and we are unpersuaded that
principles of corporate agency have any application to the alleged real property conveyance before
us. Ratification of the conveyance of the homestead by the nonjoining spouse requires a formal
recognition of the conveyance through execution of an instrument. See Kunkel v. Kunkel, 515
S.W.2d 941, 948 (Tex. Civ. App.--Amarillo 1974, writ ref'd n.r.e.). Silence in this circumstance
is not ratification and the facts of this case as presented do not prove ratification. 

 (4) Homestead Right Defeating Jurisdiction

 Justice courts' limited jurisdiction forecloses its adjudication of "the merits of the title" to real
property. Tex. R. Civ. P. 746; see also Tex. Gov't Code Ann. § 27.031(b)(4). The merits of title
were called into question in this suit due to Geldard's claim of his nonjoining spouse homestead
right. The question, then, is whether the homestead "right" implicates the "merits of the title."

 The homestead right constitutes an estate in land. Laster v. First Huntsville Prop. Co., 826
S.W.2d 125, 129 (Tex. 1991). "This estate is analogous to a life tenancy, with the holder of the
homestead right possessing the rights similar to those of a life tenant for so long as the property
retains its homestead character." Id. The homestead estate is a vested interest. See Morris, 393
S.W.2d at 387. The homestead estate has the effect of reducing the underlying ownership rights to
"something akin to remainder interests." Laster, 826 S.W.2d at 129 (quoting United States v.
Rodgers, 461 U.S. 677, 686 (1983)). 

 As we have noted, so long as a spouse continues to assert his homestead right, a conveyance
without his joinder is wholly inoperative as against that nonjoining spouse. See Zable, 649 S.W.2d
at 137-38 (citing Lewis v. Brown, 321 S.W.2d 313, 317 (Tex. Civ. App.--Fort Worth 1959, writ
ref'd n.r.e.)). The continuing right to the homestead estate does not exist in a legal vacuum. The
homestead right is asserted under the title from which it arose: the signing spouse's title to her
separate property. See Marino v. Lombardo, 277 S.W.2d 749, 754 (Tex. Civ. App.--Beaumont
1955, writ ref'd n.r.e.). Indeed, one court has recognized that the signing spouse retains legal title
while the nonjoining spouse exercises the homestead right. See id. On the termination of the
homesteading spouse's homestead right, the legal title passes to the grantee and becomes operative. 
See id. We find that a nonjoining spouse exercising the homestead right to his spouse's conveyance
of a separate property homestead exerts a right to possession under the granting spouse's title.

 The determination of Watson's right to possession in her forcible detainer action necessarily
required an adjudication of the merits of title between Watson (by conveyance from Wanda) and
Geldard (as the claimant of a homestead right under Wanda's separate title). Thus, the justice court
adjudicated the merits of title in determining Watson's right to possession in her forcible detainer
action. The justice court's judgment, and the county court at law judgment on appeal, are void. See
Gentry v. Marburger, 596 S.W.2d 201 (Tex. Civ. App.--Houston [1st Dist.] 1980, writ ref'd n.r.e.). 
 As a final matter, we note that Geldard's request to order the court below to sever rather than
dismiss his counterpetition is moot pursuant to our conclusion that the courts below lacked
jurisdiction. See Perry v. Del Rio, 66 S.W.3d 239, 256 (Tex. 2001). 

 We vacate the judgment below, and dismiss the appeal. 




 Bailey C. Moseley

 Justice


Date Submitted: December 8, 2006

Date Decided: January 25, 2007

1. Both parties go back and forth in their pleadings, as do both courts below on their dockets
and in their judgments, as to whether this was a forcible detainer cause of action or a forcible entry
and detainer cause of action. 

 We note that the term "'forcible entry and detainer' is often used to describe both an action
for forcible entry and detainer, as well as an action for forcible detainer." 41 Tex. Jur.3d Forcible
Entry and Detainer § 1 (2006). Although the causes of action are distinct, compare Tex. Prop.
Code Ann. § 24.001 (Vernon 2000) with Tex. Prop. Code Ann. § 24.002(a) (Vernon 2000), for our
purposes in this opinion, the analysis is the same.

 We note, parenthetically, that Watson appears to have failed to assert or prove essential
elements of both causes of action: (1) the landlord/tenant relationship necessary for a forcible
detainer action; and (2) both Geldard's forcible entry and Watson's own possession necessary for a
forcible entry and detainer action. See Dent v. Pines, 394 S.W.2d 266, 268 (Tex. Civ.
App.--Houston 1965, no writ); Am. Spiritualist Ass'n v. Ravkind, 313 S.W.2d 121, 124-25 (Tex.
Civ. App.--Dallas 1958, writ ref'd n.r.e.).
2. The record contains no facts in support of this, but both parties seem to concede this point. 
The record indicates that Wanda bought the property in 1967 with Ocie Reed, an earlier husband
(who was also Watson's father). Though the record contains no evidence as to Ocie Reed's
whereabouts after the purchase or the disposition of any interest which he may have owned in the
property, Watson's counsel asserts on appeal that Ocie Reed died in 1971.
3. Though Watson testified to the fact of this conveyance, no deed offered or admitted as
evidence indicated Wanda's ownership of the property, let alone Watson's. Watson submitted only
a deed from Wanda and Ocie Reed to a William Stone and a "Quit Claim Deed" from (blank) to
(blank) of an undetermined "foregoing instrument."